Jesse Charles STELL, III, Appellant,

v.

STATE of Texas, Appellee.

No. 13–85–145–CR.

Court of Appeals of Texas,
Corpus Christi.

May 29, 1986.

W.A. Orr, Jr., Bay City, for appellant.

Daniel W. Shindler, Dist. Atty., Bay City, for appellee.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This is an appeal from a jury conviction for involuntary manslaughter. Appellant was sentenced to ten years' confinement, probated for ten years, and assessed a fine of $5,000.00.

In appellant's first three grounds of error, he challenges the sufficiency of the evidence to support his conviction. We affirm.

Appellant was convicted under TEX.PE-NAL CODE ANN. § 19.05(a)(2) (Vernon 1974) which provides, in part:

(a) A person commits an offense if he:

... .

(2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual.

■ We will review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McGoldrick v. State*, 682 S.W.2d 573 (Tex.Crim.App.1985); *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App.1983) (opinion on rehearing).

In the early morning hours of September 8, 1983, Delores Erevia found the body of her fourteen-year-old son beside a road near Bay City. He had failed to return from a nearby skating rink by his 9:30 p.m. curfew. He was last seen alive between 8:30 p.m. and 9:00 p.m. on September 7, 1983. The pathologist testified that the cause of death was consistent with being hit by a car.

Patrol Officers Robert Thompson and Richard Rooth stopped appellant's vehicle on September 7, 1983, at approximately 9:24 p.m. He had been traveling eastbound nine miles from Bay City and about seven or eight miles from the place where Raymond Erevia's body was found. The officers had noted the car appellant was driving was being operated without headlights and was weaving across the center lane. After they stopped appellant, he exited from the passenger side of the vehicle because the door on the driver's side would not open. The officers noted appellant was unsteady on his feet and smelled of alcohol. He had bloodshot eyes, his speech was slurred and he appeared very intoxicated. They also observed damage to the left front side of his vehicle, including a broken headlight. They took appellant into custody and impounded his vehicle.

Officer Carl Gingles investigated the accident scene. He testified he retrieved eighty-eight pieces of glass which he believed came from a headlight. He also found part of a rubber bumper guard. The victim's bicycle was also taken from the scene. Gingles examined appellant's car and removed parts of the headlight and socket. He also removed a "plastic looking scraping" and part of the bumper guard from the vehicle.

Joe Ronald Urbanosky, a chemist for the Texas Department of Safety, testified his job involved analyzing physical evidence in criminal cases. Urbanosky and his employees analyzed nine items submitted to him in preparation for the trial of this case. They included: two black bumper guards, eighty-eight pieces of glass, four additional pieces of glass and a metal headlight bulb

**748**

part, a bicycle, blue plastic scrapings, the victim's clothing and unknown hair samples.

Urbanosky stated that a piece of bumper guard found at the scene and one taken from appellant's vehicle "pieced back together to such an extent that it is our opinion that they were one single unit." He was also asked to compare the eighty-eight pieces of glass found at the scene to four pieces taken from the headlight of appellant's vehicle. There were three pieces which fit with four smaller pieces. Urbanosky's opinion was that at one time they were part of the same headlight. According to Urbanosky, the plastic on the bicycle seat had the same physical and chemical properties as the plastic scrapings taken from appellant's car.

We find the evidence sufficient to show beyond a reasonable doubt that appellant was the driver of the automobile which struck and killed the deceased.

■ Appellant also urges that the evidence was insufficient to show he was intoxicated at the time of the offense. The officers who stopped appellant at 9:24 p.m. testified that appellant was the only occupant in the vehicle, and was intoxicated. Each officer testified he was qualified to make that determination. Their testimony was sufficient to prove the intoxication element of the offense. *See Hardie v. State,* 588 S.W.2d 936 (Tex.Crim.App.1979); *Rathmell v. State,* 653 S.W.2d 498 (Tex.App.— Corpus Christi 1983, pet. ref'd). The jury had evidence before it that the offense occurred at most 24 to 54 minutes before the time appellant was found driving the motor vehicle in a state of intoxication. Appellant's first three grounds of error are overruled.

■ By appellant's fourth ground of error, he alleges the prosecutor's improper jury argument at the punishment phase of trial was reversible error.

The complained of argument was, as follows:

You have found him guilty of doing it. He's a good old boy. When they did the investigation on Lee Harvey Oswald, they said he was a good old boy, but he shot President Kennedy.

MR. ORR: Objection, Your Honor.

THE COURT: Overruled.

MR. SHINDLER: These killers of our Presidents and things like that, big crimes, the first thing you see is, well, shucks, the neighbor said he was a good old boy. I didn't think he would do something like that, but they do it. If we are entitled to be good old boys and do something like that, each one of us gets our turn to do that, go out and kill somebody, and because we are good old boys, we get off on probation—

MR. ORR: That's nothing more than prejudicial argument, Your Honor.

MR. SHINDLER: I will go on to something else.

THE COURT: That's your objection?

MR. ORR: It is prejudicial.

THE COURT: Okay. Overruled.

The four identified areas of acceptable jury argument are: 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answer to argument of opposing counsel, 4) plea for law enforcement. *Phillips v. State,* 701 S.W.2d 875 (Tex. Crim.App.1985); *Denison v. State,* 651 S.W.2d 754 (Tex.Crim.App.1983); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim. App.1973). We consider any remarks of counsel in the context in which they appear. *Denison v. State,* 651 S.W.2d at 761. Jury argument must be extremely or manifestly improper, or inject new or harmful facts into evidence to be reversible error. *Id.* at 762.

■ Counsel's comparison to Lee Harvey Oswald clearly injected into the record facts which are not in evidence. This argument was highly improper and error. We now look at the statement in light of the record as a whole to determine whether it was so extreme or manifestly improper, or injected new facts harmful to the accused, that it constituted reversible error. *Phillips v. State,* 701 S.W.2d at 892; *Brooks v.*

*State*, 642 S.W.2d 791 (Tex.Crim.App.1982). Appellant was convicted of involuntary manslaughter, a third degree felony, punishable by confinement in the Texas Department of Corrections for not more than ten years or less than two years and a fine not to exceed $5,000.00. TEX.PENAL CODE ANN. § 12.34 (Vernon 1974). The statements were clearly made to influence the jury and calculated to cause the jury to not recommend probation as requested by appellant. The prosecutor requested the maximum confinement and argued against probation. Appellant received a probated sentence and the maximum fine allowable. In view of the overwhelming circumstantial evidence of his guilt and the fact the jury recommended probation, in spite of the thrust of the improper argument against probation, we find that the error was harmless.

We view this type of argument abhorrent and volunteer our belief that the prosecutor's statement may have constituted reversible error but for the jury's recommendation of probation.

Appellant's fourth ground of error is overruled.

Appellant's conviction is AFFIRMED.