Affirmed as Modified; Opinion Filed March 14, 2013.

In The

Court of Appeals

Fifth District of Texas at Dallas

No. 05-12-00160-CR
No. 05-12-00161-CR
No. 05-12-00162-CR

DON EARL PRICE, Appellant
V.
THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1
Dallas County, Texas
Trial Court Cause Nos. F11-56742-H, F06-72527-H, and F06-72528-H

## MEMORANDUM OPINION

Before Justices Francis, Lang, and Evans
Opinion by Justice Francis

While on deferred adjudication for two felony drug offenses, Don Earl Price was arrested for murder. Following a trial, a jury convicted him of the offense and assessed punishment at life imprisonment (Cause No. 05-12-00160-CR). Then, after a hearing, the trial court adjudicated appellant's guilt in each drug case and sentenced him to thirty years in prison and two years in state jail (Cause Nos. 05-12-00161-CR and 05-12-00162-CR).

On appeal from the murder conviction, appellant complains about improper argument by the prosecutor and ineffective assistance of counsel. In the revocations, appellant seeks various modifications of the judgments to accurately reflect the proceedings below. We overrule the issues raised in the murder case and affirm the trial court's judgment. We modify the judgments in the remaining cases and affirm as modified.

Neiman Derrough was fatally shot when a brawl broke out at an apartment complex. Two witnesses at trial identified appellant as the person who shot Derrough. In addition, Derrough's wife testified she saw appellant holding a gun inside his shorts; later, she testified she did not actually see the gun, but that her aunt said appellant had a gun. Appellant testified and denied shooting Derrough.

In his first issue in the murder case, appellant contends the trial court erred in overruling his objection to the prosecutor arguing outside the record in his closing argument in rebuttal. Specifically, he complains about the following argument:

> The video down at the police station, go back and take a look at one part. When he's — before he starts shadow boxing. He's yelling. He's cursing. Tony Montana. Tony Montana. You're innocent, and you're bringing up Tony Montana? You-all know who Tony Montana is? Scarface. He's a killer.

At trial, a video of the police interrogation of appellant was admitted as evidence. After first obtaining basic information from appellant, Detective Lundberg began to ask questions relevant to the offense. Appellant acknowledged he was at the apartment complex that night but said he left before the shooting occurred. Ultimately, appellant became agitated by the questions, accused Detective Lundberg of "playing dumb," and demanded he "get to the real, man" because the detective was "wasting" his time. Appellant asked if he was the detective assigned to the case, and Detective Lundberg said he was not. Appellant then ended the interview and demanded that Detective Lundberg get the "real detective in here."

Detective Lundberg left appellant alone in the room. Immediately, appellant began to rant: "Can't tell me about penal code, what, 19.02, 19.01, 19— what, come on, man. Texas criminal — yeah, I know about that shit, man. I studied that shit, man." For the next two minutes, appellant went on a tirade, shouting and cussing. Appellant called for the police to "get

the real detective in here" because he did not have "time to be bull-shitting with y'all." He claimed he knew "what y'all motherfuckers trying to do, I ain't fucking dumb, sending one detective trying to make me switch up my story, bitches, come on." Appellant said to "get to the real" and bring the "'missus, whoever the motherfucker is, on." He continued: "Y'all got hardcore shit, let's go. Let's play ball, baby. . . Where she [the lead detective] at? . . . I'm ready. Shoot your best shot. Bring me some hardcore evidence in here, man. For real, man. Saying I did this shit. I'm innocent. Fucking with me. . . Got me stirred up now, man. Let's go. Shit, we in a fight now, baby. . . Knockout king, man— fixing to knock this shit out of the park. . . Ya'll ready to go to war? Let's go! Tony Montana." Detective Lundberg then returned to the room to tell appellant the detective would be arriving in thirty minutes or less. When Detective Lundberg left, the video shows appellant shadow boxing.

A prosecutor may not use closing arguments to present evidence that is outside the record. *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011), *cert. denied,* 132 S. Ct. 1099 (2012). Improper references to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the jury and, as such, are inappropriate. *Id.*

Here, the reference to Tony Montana is part of the evidence. Although appellant asserts that the last name is "muffled" on the video, we have viewed the video and appellant clearly says "Montana." There is no evidence, however, regarding "Scarface," (the movie in which Tony Montana was the fictional character), or that Tony Montana was a killer. To that extent, the argument contained facts not in evidence and was improper.

Improper argument error of this type is nonconstitutional in nature, and a nonconstitutional error "that does not affect substantial rights must be disregarded." *Id.* To

determine whether appellant's substantial rights were affected, we balance the severity of the misconduct, any curative measures, and the certainty of conviction absent the misconduct. *Id.*

The prosecutor's comments were a small portion of the State's entire closing argument, and the argument was not emphasized. After the trial court overruled the objection, the prosecutor explained that appellant "wants to be a tough guy. He wants to be, excuse my language, the bad ass." Viewing the State's closing arguments as a whole, we cannot conclude there was a willful and calculated effort to deprive appellant of a fair and impartial trial nor can we conclude appellant was prejudiced by the prosecutor's comments. *See id.*

The trial court overruled the objection, so there were no curative instructions. The evidence, however, included eyewitness testimony that appellant was the shooter. Two witnesses selected appellant from a photo lineup administered within hours of the shooting, and both identified appellant at trial. Other witnesses placed appellant on the stairs with his hands in his shorts immediately before the shooting. Finally, appellant himself admitted that he was at the apartment complex on the night of the shooting, although he claimed to have left the scene before the shooting occurred. Given the brevity of the State's comments, the lack of prejudice, and the strength of the State's case, we conclude any error was harmless.

In reaching this conclusion, we have considered the cases relied upon by appellant. *See Mills v. State*, No. 07-08-0348-CR, 2009 WL 3320249 (Tex. App.—Amarillo Oct. 14, 2009, no pet.); *Gonzalez v. State*, 115 S.W.3d 278 (Tex. App.—Corpus Christi 2003, pet. ref'd); *Brown v. State*, 978 S.W.2d 708 (Tex. App.—Amarillo 1998, pet. ref'd); and *Stell v. State*, 711 S.W.2d 746 (Tex. App.—Corpus Christi 1986, no pet.). In each of those cases, the prosecutor compared the defendant to real-life, notorious criminals in highly prejudicial and improper arguments. *See Mills*, 2009 WL 3320249 (attacking defendant's insanity defense by comparing his state of mind

to that of "John Wayne Gacy, the clown murderer, [who]was killing those boys and putting them under the floor of his house"; Jeffrey Dahmer, "killing those boys and eating them"; and Muhammed Atta, "flying a plane into the North Tower killing hundreds of innocent men women and children"); *Gonzalez*, 115 S.W.3d at 283-84 (making direct comparison between defendant's offense with Osama bin Laden's orchestration of 911 attacks and effectively asking jury to punish him as they would bin Laden); *Brown*, 978 S.W.2d at 713-14 (comparing accused to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy); *Stell*, 711 S.W.2d at 748 (comparing accused to Lee Harvey Oswald). Those arguments were of a different character than the one made in this case. We overrule the first issue.

In his second issue, appellant complains defense counsel rendered ineffective assistance by failing to object to a witness's testimony as hearsay. Specifically, the victim's wife first testified she saw appellant holding a gun inside his gym shorts. Later, however, she said she did not actually see the gun, but that her aunt said appellant had a gun. Appellant asserts the testimony was inadmissible hearsay that deprived him of effective assistance.

To successfully assert an ineffective assistance of counsel challenge, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An ineffective assistance of counsel claim must be "firmly founded in the record," and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only

if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

The court of criminal appeals has made clear that, in most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110. Further, counsel should ordinarily be accorded the opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). If trial counsel is not given that opportunity, then an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.*

Appellant filed a motion for new trial but did not raise a ground of ineffective assistance nor has he otherwise developed a record showing why his counsel failed to lodge a hearsay objection. There may have been no good reason for failing to object or, perhaps, the State could have brought the aunt to the courtroom to testify, and counsel realized that cross-examining the aunt would not benefit his client. *See id.* Maybe defense counsel wanted the focus to remain on the inconsistency in the wife's testimony. Neither trial counsel nor the State have been given an opportunity to respond to appellant's allegation. Consequently, we conclude the record fails to show deficient performance. We overrule the second issue.

In Cause Nos. 05-12-00161/162-CR, appellant brings four issues in which he asks the Court to modify the judgments to reflect that (1) appellant pleaded not true to a violation of condition (a) (that he knowingly and intentionally committed the offense of murder as alleged in F11-56742) and true to the remaining violations in each case and (2) appellant violated the conditions of his community supervision as alleged in the State's amended motion to adjudicate, as opposed to the original motion. The State joins in appellant's request.

This Court has the authority to correct the judgments of the court below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

The trial court's written judgments recite that (1) appellant pleaded true to the entire motion to adjudicate and (2) appellant violated the conditions of community supervision "as set out in the State's ORIGINAL Motion to Adjudicate Guilt." The record, however, reflects the parties proceeded on the State's June 30, 2011 amended motion. The motion included condition (a), which alleged appellant unlawfully, knowingly, and intentionally committed the offense of murder. The motion also included six other allegations. At the hearing, appellant's counsel specifically stated that appellant was pleading not true to condition (a).

We sustain issues one through four and modify the judgments to reflect that appellant (1) pleaded not true to a violation of condition (a) and true to the remaining violations in each case and (2) violated the conditions of his community supervision as alleged in the State's June 30, 2011 Amended Motion to Revoke Probation or Proceed to Adjudication Guilt.

We affirm the judgment in Cause No. 05-12-00160-CR. We affirm the judgments in Cause Nos. 05-12-00161-CR and 05-12-00162-CR as modified.

/s/ Molly Francis
_____
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120160F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

DON EARL PRICE, Appellant

No. 05-12-00160-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F11-56742-H.
Opinion delivered by Justice Francis;
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 14th day of March, 2013.

_____
MOLLY FRANCIS
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DON EARL PRICE, Appellant

No. 05-12-00161-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F06-72527-H.
Opinion delivered by Justice Francis;
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect that Don Earl Price (1) pleaded Not True to Condition (a) and True to the remaining violation allegations and (2) violated the conditions of his community supervision as alleged in the State's June 30, 2011 Amended Motion to Revoke Probation or Proceed to Adjudication of Guilt.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 14th day of March, 2013.

MOLLY FRANCIS
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

DON EARL PRICE, Appellant

No. 05-12-00162-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F06-72528-H.
Opinion delivered by Justice Francis;
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect that Don Earl Price (1) pleaded Not True to Condition (a) and True to all remaining violation allegations and (2) violated the conditions of his community supervision as alleged in the State's June 30, 2011 Amended Motion to Revoke Probation or Proceed to Adjudication of Guilt.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 14th day of March, 2013.

MOLLY FRANCIS
JUSTICE